ORIGINAL

FILED
CLERK, U S DISTRICT COURT
MAR 29 2001
CENTRAL DISTRICT OF CALIFORNIA
BY _____ DEPUTY

ENTERED
MAR 29 2001
CLERK U S DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
SANTA ANA OFFICE
BY _____ DEPUTY

NO JS-6

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA
### SOUTHERN DIVISION

| | |
|---|---|
| TELEPRESENCE TECHNOLOGIES, LLC,<br><br>　　　　Plaintiff,<br><br>　v.<br><br>THE UPPER DECK COMPANY,<br><br>　　　　Defendant. | SA CV 00-183 AHS (EEx)<br><br>ORDER (1) GRANTING DEFENDANTS' JOINT MOTION FOR SUMMARY JUDGMENT FOR LACK OF STANDING ON THE GROUND THAT LNCJ, LTD., HAS NO RIGHTS TO THE PATENTS-IN-SUIT; (2) DENYING AS MOOT DEFENDANTS' MOTION FOR SUMMARY JUDGMENT FOR LACK OF STANDING DUE TO INSUFFICIENT RIGHTS AS LICENSEE AND MOTION TO SEQUENCE DISCOVERY |

Docketed ___
Copies / NTC Sent ___
___ JS-5 / JS-6
___ JS-2 / JS-3
___ CLSD

X Priority
X Send
___ Clsd
X Enter
NO JS-5/JS-6
___ JS-2/JS-3

ENTER ON ICMS
MAR 29 2001

1. <u>Ruling/Order</u>:

　　Based on review of the parties' papers filed in connection with the above motions, the Court grants defendants' joint motion for summary judgment that plaintiff lacks standing on the ground that LNCJ, Ltd. ("LNCJ"), had no rights in the patents-in-suit to license to plaintiff when plaintiff filed the instant suit (Motion No. 1). The Court denies as moot defendants' joint motion for summary judgment that plaintiff lacks standing on the ground that plaintiff's rights as a

licensee are insufficient to permit it to bring the instant suit (Motion No. 2) and defendants' joint motion to sequence discovery.

    2. <u>Principal Issues</u>:

Did plaintiff have standing to sue on U.S. Patent Nos. 5,417,431 ('431), 5,421,583 ('583), and 5,803,501 ('501) on February 18, 2001, the date plaintiff filed the instant suit? If not, should the instant action be dismissed with or without prejudice?

<u>Gaia Technologies, Inc. v. Reconversion Technologies, Inc.</u>, 93 F.3d 774 (Fed. Cir. 1997), *mandate withdrawn and amended on other grounds* by 104 F.3d 1298 (Jan. 1997), *reh'g and petition for reh'g en banc denied* (Mar. 1997); <u>Enzo APA & Son, Inc. v. Geapag A.G.</u>, 134 F.3d 1090 (Fed Cir. 1998); <u>Proctor & Gamble Co. v. Paragon Trade Brands, Inc.</u>, 917 F. Supp. 305 (D. Del. 1995); <u>Minneapolis & St. Louis R.R. Co. v. Peoria & Perkin Union Ry. Co.</u>, 270 U.S. 580 (1926); <u>Textile Productions, Inc. v. Mead Corp.</u>, 134 F.3d 1481 (Fed. Cir. 1998).

    4. <u>Evidence, Judicial Notice, Objections</u>:

Plaintiff's objections to Alexandra Mahaney's declaration are overruled. Defendants' objections to pages 3:2 and 3:4-6 of Adrian Gluck's declaration are sustained. The remaining defense objections to Gluck's declaration are overruled.

    5. <u>Analysis</u>:

For a plaintiff to have standing to file an infringement suit, a plaintiff must have valid rights to the patent-in-suit on the date the plaintiff files the infringement

suit. Enzo APA & Son, Inc. v. Geapag A.G., 134 F.3d 1090, 1093-94 (Fed Cir. 1998) ("As a general matter, parties should possess rights before seeking to have them vindicated in court."); Gaia Technologies, Inc. v. Reconversion Technologies, Inc., 93 F.3d 774, 779-80 (Fed. Cir. 1997), *mandate withdrawn and amended on other grounds* by 104 F.3d 1298 (Jan. 1997), *reh'g and petition for reh'g en banc denied* (Mar. 1997); Minneapolis & St. Louis R.R. Co. v. Peoria & Perkin Union Ry. Co., 270 U.S. 580, 586 (1926) ("The jurisdiction of the lower court depends upon the state of things existing at the time the suit was brought."); Proctor & Gamble Co. v. Paragon Trade Brands, Inc., 917 F. Supp. 305, 307 (D. Del. 1995). Plaintiff has the burden of showing it has standing. See Proctor & Gamble, supra at 307 ("In response to a motion for summary judgment on the issue of standing, the party alleging standing must set forth by affidavit or other appropriate means 'specific facts' to support standing.").

**The '431 and '583 Patents**

On February 18, 2001, when plaintiff filed the instant suit, LNCJ had no rights to '431 and '583 to license to plaintiff, because Gluck & Associates did not assign its rights in '431 and '583 to LNCJ until Gluck signed and notarized the assignments to LNCJ on March 2, 2000, roughly two weeks after plaintiff filed the instant suit. Like the license agreement in Enzo APA and the assignment agreement in Gaia, the assignment agreements between Gluck & Associates and LNCJ purport to be retroactively effective to February 1, 2000. Mahaney Decl., Ex. 15 at 176, Ex. 18 at 190 ("Effective this 1st Day of February, 2000"). The Recordation Cover Sheet that Gluck's patent

attorney, Sam Stone, filed with the Patent & Trademark Office ("PTO") states that the assignment was "executed" February 1, 2000. Id., Ex. 15 at 174, Ex. 18 at 187. However, the agreements were not signed and notarized until March 2, 2000. Id., Ex. 15 at 176, Ex. 18 at 190.

Plaintiff does not argue that Adrian Gluck signed the '431 and '583 assignment agreements on February 1, 2000, or offer any evidence that raises a triable issue of fact as to the execution date of the assignments. Plaintiff itself offers no evidence of the date of execution of the assignments. The only evidence of the execution dates before the Court are the copies of the assignment agreements filed with the PTO, included in the Mahaney declaration as defendants' Exhibits 15 and 18. Plaintiff only disputes the operative dates by stating that the "assignment[s] [were] effective February 1, 2000 and [were] notarized on March 2, 2000." Pl.'s Response and Opposition to Defendants' Statement of Uncontroverted Facts and Conclusions of Law at 3:13-18, 4:10-21. In fact, in response to the Court's direct questioning regarding the assignment dates of '431 and '583, plaintiff only confirmed that the '431 and '583 assignments purport to be effective retroactively to February 1, 2000.

The Federal Circuit has rejected such attempts to confer patent rights retroactively to an "effective" date that pre-dates the execution of the assignment, because "[a]llowing a subsequent assignment to automatically cure a standing defect would unjustifiably expand the number of people who are statutorily authorized to sue." Enzo APA, supra at 1093; see also Gaia, supra at 779-80 (filing with PTO, after infringement

suit is filed, a written assignment with retroactive "effective date" that precedes filing of suit does not confer standing as of the effective date).

Based on one reading of Gaia, the Gluck & Associates assignments to LNCJ were not executed until Gluck recorded the assignments with the PTO on March 20, 2000, over one month after plaintiff filed the instant suit. In Gaia, the plaintiff filed the assignment with the PTO on October 24, 1994; the recordation sheet said the "effective date" was August 4, 1991; the assignment referred to an "effective date," but was otherwise undated. Gaia, supra at 778-79. The Federal Circuit set the execution date for the assignment at October 24, 1994, the date on which the plaintiff recorded the assignment with the PTO. Under 35 U.S.C. § 261, a valid assignment must be in writing but need not be filed with the PTO except to establish rights against subsequent purchasers. However, one reading of Gaia is that *if* a party chooses to record an assignment with the PTO, the recordation date for an undated assignment that includes a retroactive effective date is the date of execution of the assignment. Under this reading of Gaia, LNCJ did not obtain assignment rights to '431 and '583 until March 20, 2000, when Gluck recorded the assignment with the PTO.

In short, with regard to '431 and '583, there is no genuine dispute that plaintiff lacks standing to sue because LNCJ did not acquire rights that it could license to plaintiff until March 2, 2000, at the earliest, after plaintiff filed the instant suit, and the Gluck & Associates-LNCJ assignment agreements'
//

retroactive language cannot confer standing on plaintiff before that date.

Plaintiff also presents no evidence raising a genuine dispute that LNCJ ever gave Gluck & Associates valuable consideration for the assignments of '431 and '583.

**The '501 Patent**

Plaintiff offers no evidence to dispute that Gluck's attempted transfer to Laservision, Ltd., was ineffectual. There is no genuine dispute that the latter entity has never existed, and plaintiff admitted as much at the hearing. As a result, Laservision, Ltd., had no rights to '501 to assign to LNCJ, which in turn had no rights to assign to plaintiff. Thus, plaintiff had no rights to '501 on February 18, 2000, when plaintiff filed the instant Complaint. Plaintiff's "alternative analysis" that Gluck transferred '501 to LNCJ through Laservision, Ltd., lacks merit. Opp'n at 15:1-8. The only evidence before the Court indicates that in signing the alleged transfer from Laservision, Ltd., to LNCJ, Gluck signed the transfer on behalf of Laservision Productions, which had no rights to '501, and not on his own behalf or on Laservision, Ltd.'s behalf. Mahaney Decl., Ex. 21, at 201. Furthermore, there is no genuine dispute that LNCJ gave no valuable consideration for the attempted assignment from Laservision, Ltd.

Alternatively, the February 28, 2001 state-court Turnover Order assigning '431, '583, and '501 to Stephen Turner, recorded with the PTO on March 5, 2001, resolves any doubts that Adrian Gluck, Gluck & Associates, and LNCJ currently have no rights to '431, '583, and '501 to assign to plaintiff.

1    Pursuant to <u>Textile Productions, Inc. v. Mead Corp.</u>,
2 the Court dismisses this action with prejudice. <u>Textile</u>
3 <u>Productions, Inc. v. Mead Corp.</u>, 134 F.3d 1481 (Fed. Cir. 1998).
4 In <u>Textile Productions</u>, the Federal Circuit held in part that a
5 district court properly dismissed with prejudice an infringement
6 suit brought by a licensee due to lack of standing, because, as
7 of the filing of the complaint, the licensee was not an exclusive
8 licensee who could sue for infringement without joining the
9 licensor. <u>Textile Productions</u>, <u>supra</u> at 1485 ("The district
10 court correctly dismissed the infringement claim with prejudice
11 because [the plaintiff licensee] had its chance to show standing
12 and failed."). Plaintiff here likewise has had its chance to
13 establish standing and has failed.
14    IT IS SO ORDERED.
15    DATED: March 27, 2001.

                                    _____
                                         ALICEMARIE H. STOTLER
                                    UNITED STATES DISTRICT JUDGE